[Cite as *Lozada v. Lozada*, 2014-Ohio-5700.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| KRISTEN L. LOZADA, | : | **O P I N I O N** |
| Petitioner-Appellant/ Cross-Appellee, | : | |
| | : | **CASE NO. 2012-G-3100** |
| - vs - | : | |
| | : | |
| RICARDO LOZADA, | : | |
| Respondent-Appellee/ Cross-Appellant. | : | |
| | : | |

Appeal from the Geauga County Court of Common Pleas, Domestic Relations Division, Case No. 10DV001365.

Judgment: Affirmed.


*Randy A. Vermilya* and *Pamela D. Kurt,* 30432 Euclid Avenue, Suite 101, Wickliffe, OH 44092 (For Petitioner-Appellant/Cross-Appellee).

*Richard C. Rieth* and *Kristen A. Crane*, 1406 W. 6th Street, 2nd Floor, Cleveland, OH 44113, and *Victoria N. Smith,* Victoria Nagy Smith & Co. L.P.A., P.O. Box 141, Newbury, OH 44065 (For Respondent-Appellee/Cross-Appellant).


CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant/cross-appellee, Kristen L. Lozada ("wife"), appeals from the judgment of the Geauga County Court of Common Pleas, Domestic Relations Division, awarding appellee/cross-appellant Ricardo Lozada ("husband") attorney fees, pursuant to R.C. 2323.51, for engaging in frivolous conduct in prosecuting a domestic violence civil protection order. Husband has filed a cross-appeal relating to the trial court's

judgment reducing the amount of attorney fees awarded to him by the magistrate. For the reasons discussed in this opinion, we affirm.

{¶2} On November 16, 2010, wife filed a petition for domestic violence civil protection order ("CPO"). Generally, the petition alleged that husband had engaged in acts of domestic violence by threatening wife, threatening to take custody of the parties' child, and that wife was in fear of husband. On the same date, the magistrate entered an ex parte CPO.

{¶3} A full hearing was held before the magistrate who, on February 8, 2011, entered his decision denying the petition for a CPO. The magistrate found that wife had made materially false statements in her affidavit with the intent of causing the court to believe husband was harassing her. The magistrate further found that wife was not a credible witness and virtually all the evidence she presented in support of the CPO was based upon unclear generalizations and unspecified claims. The magistrate determined that, in light of both parties' testimony, wife filed the petition *not* to obtain relief from husband's behavior and protect herself, but merely as a means of retaliation for husband ending a sexual relationship the parties had maintained off-and-on since their divorce. Finally, the magistrate recommended that the court make an express finding that husband did not commit any acts of domestic violence on wife or the parties' child because wife's case was "so utterly devoid of merit, and the contrary evidence against her case is so strong."

{¶4} Neither party filed objections to the magistrate's decision and, on March 4, 2011, the trial court entered judgment approving and adopting the decision. No appeal was taken from this judgment. On March 8, 2011, husband filed a "Motion for Attorney Fees, Court Costs, and Other Reasonable Expenses Pursuant to O.R.C. Section

2

2323.51 and Civil Rule 11." Wife filed a memorandum in opposition to the motion. The matter was scheduled for hearing on May 31, 2011; on that date, however, wife, through counsel, advised the court that she had filed a petition under Chapter 7 of the Bankruptcy Code in February 2011. Counsel further advised that wife had received a discharge in bankruptcy on May 25, 2011. Because, however, it was unclear whether husband's claims against wife were discharged, the court stayed the matter for six months or upon motion of either party to dissolve the stay.

{¶5} On August 16, 2011, husband, through counsel, moved to dissolve the stay. The motion asserted that, upon investigation, counsel determined husband's claim was neither listed nor scheduled in the bankruptcy petition. And, because husband did not have actual knowledge of the bankruptcy proceedings until after the discharge was entered, counsel asserted the claim was not discharged. The motion asked the court to return the matter to the active docket, proceed with a hearing on the R.C. 2323.51 motion, and make a further determination that any potential debt arising therefrom was non-dischargeable.

{¶6} On November 8, 2011, a hearing on the motion was held and the magistrate issued his decision on December 9, 2011. Based upon the evidence heard at the CPO hearing, which was the basis of husband's frivolous conduct argument, the magistrate concluded that wife engaged in frivolous conduct in filing and prosecuting the petition for CPO as defined under R.C. 2323.51(A)(2)(a)(i), (ii), and (iii). Given this conclusion, the magistrate further concluded that husband was entitled to recover attorney fees in the amount of $22,852.52 (the full amount requested for work relating to the CPO) as well as litigation expenses in the sum of $1,045.16. The magistrate also found that the court had jurisdiction to determine the dischargeability of the debt. As

3

such, the court concluded that the attorney fees award and litigation expenses award were non-dischargeable debts within the meaning of Section 523(a)(6) of the United States Bankruptcy code.[1]

{¶7} Wife filed objections to the magistrate's decision and husband duly responded to the objections. On August 8, 2012, the trial court adopted the magistrate's decision in part, modified it in part, and approved it as modified. In particular, the trial court adopted the magistrate's findings and conclusions that wife engaged in frivolous conduct as defined by R.C. 2323.51(A)(2)(a)(i), (ii), and (iii) by filing and prosecuting the petition for a CPO against husband. The trial court, however, reduced the $23,852.50 award in attorney fees to $15,000 because the magistrate's award was "too much for a case of this nature." The trial court then adopted the magistrate's conclusion that the debt was non-dischargeable.

{¶8} Wife filed a timely appeal from this judgment and husband filed a timely cross-appeal.

{¶9} For her first assignment of error, wife asserts:

{¶10} "The trial court's finding of a sanction of attorney fees is against the manifest weight of the evidence."

{¶11} Pursuant to R.C. 2323.51, a court may "award court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with a civil action or appeal * * * to any party to the civil action or appeal who was adversely affected by frivolous conduct." R.C. 2323.51(B)(1). "Conduct" includes "[t]he filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, the

---

1. That section provides "(a) A discharge under section 727, 1141, 1228(a), 1228(b), 04 1328(b) of this title does not discharge an individual debtor from any debt - -
" * **
"(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;"

4

filing of a pleading, motion, or other paper in a civil action, * * * or the taking of any other action in connection with a civil action." R.C. 2323.51(A)(1)(a). Furthermore, "frivolous conduct" is defined as conduct that (1) obviously serves merely to harass or maliciously injure another party to the civil action, (2) is not warranted under existing law and cannot be supported by a good-faith argument for an extension, modification, or reversal of existing law, or (3) consists of allegations or other factual contentions that have no evidentiary support or are not likely to have evidentiary support after a reasonable opportunity for further investigation. R.C. 2323.51(A)(2)(a).

{¶12} "Since 'willfulness' is not a prerequisite for relief" under R.C. 2323.51, an "analysis of a claim under this statute boils down to a determination of (1) whether an action taken by the party to be sanctioned constitutes 'frivolous conduct,' and (2) what amount, if any, of reasonable attorney fees necessitated by the frivolous conduct is to be awarded to the aggrieved party." *Ceol v. Zion Indus., Inc.*, 81 Ohio App.3d 286, 291 (9th Dist.1992); R.C. 2323.51(B).

{¶13} No single standard of review applies in R.C. 2323.51 cases. *Wiltberger v. Davis*, 110 Ohio App.3d 46, 51 (10th Dist.1996). Rather, in a frivolous conduct appeal, we must consider mixed questions of law and fact. *Judd v. Meszaros*, 10th Dist. Franklin No. 10AP-1189, 2011-Ohio-4983, ¶18. "The question of what constitutes frivolous conduct may be either a factual determination, e.g., whether a party engages in conduct to harass or maliciously injure another party, or a legal determination, e.g., whether a claim is warranted under existing law." *Curtis v. Hard Knox Energy, Inc.*, 11th Dist. Lake No. 2005-L-023, 2005-Ohio-6421, ¶15. A trial court's factual findings must be given deference, and, as such, we will not disturb such determinations save an abuse of discretion. *McPhillips v. United States Tennis Assn. Midwest*, 11th Dist. Lake

5

No. 2006-L-235, 2007-Ohio-3595, ¶28. Alternatively, legal questions are reviewed under a de novo standard of review. *Id.*

{¶14} Finally, where a trial court has determined a party has engaged in frivolous conduct, the decision to assess a penalty lies within the sound discretion of the trial court. *See e.g Edwards v. Livingstone*, 11th Dist. Ashtabula Nos. 2001-A-0082 and 2002-A-0060, 2003-Ohio-4099, ¶17.

{¶15} In this case, the magistrate found that wife engaged in frivolous conduct in three separate ways: (1) by filing the petition for a domestic violence civil protection order to merely harass or maliciously injure husband. *See* R.C. 2323.51(A)(2)(a)(i); (2) by filing a petition that was not warranted under existing law or supported by a good faith argument that could serve as a basis for changing the existing law. *See* R.C. 2323.51(A)(2)(a)(ii); and (3) by filing a petition that had no evidentiary support. *See* R.C. 2323.51(A)(2)(a)(iii). In drawing these conclusions, the magistrate relied upon the factual findings and legal conclusions issued in support of denying the CPO. These determinations were rendered final when the trial judge adopted the magistrate's decision and accorded preclusive effect when no appeal was taken to challenge the judgment.

{¶16} With respect to the conclusion that wife filed the CPO merely to harass or maliciously injure husband, the magistrate found that wife made materially false statements in the affidavit supporting the ex parte CPO "with the intent and purpose of causing the Court to believe that [husband] was harassing and bombarding her with unwanted telephone calls and text messages." The magistrate also found that nearly all of the testimony relevant to proving wife's allegations was "distorted, exaggerated, or simply false."

6

{¶17} Based upon the parties' testimony, the magistrate drew the following conclusions:

{¶18} [Wife's] domestic case is ultimately and inherently self-contradictory. She claims that for three or more years, [husband] kept her in a constant state of fear. Solely because of that, according to her, she had sex with him, sent him nude pictures, went to birthday parties and movies with him and [their child], exchanged hundreds of text messages and phone calls, went to dinner, invited herself to his house, and so on – in short, carried on what the objective evidence shows was a remarkably casual, friendly, and intimate relationship with her former husband. But, she claims, this was all pretense, a façade built of desperation. She claims that she did all those things because she feared that if she didn't, he would take [their child] away from her by some unspecified means. Yet when, on November 13, 2010, he told her that their relationship was over and that after that she should communicate with him only about [their child], she reacted not with joy and relief that a terrible burden of dread had been lifted from her life, but by filing this case.

{¶19} [Wife] had no legitimate basis or reason for filing, and then continuing to prosecute, the domestic violence petition in this case. The moment she got what she claims she wanted – for [husband] to leave her alone – she struck back at him. Her theory of this case is absurd. First, even if the Court had granted her request for a

7

CPO, [husband] still could have commenced litigation at any time about the parties' parental rights and responsibilities for [their child]. Second, and more tellingly, all the evidence except for [wife's] self-serving testimony, which this magistrate does not believe, shows that [wife] wanted to continue her relationship with [husband]. When he told her to leave him alone, not to bother sending him nude pictures, not to visit him, not to send him text messages, she ignored him and persisted in her contacts with him. On November 13 she must finally have understood that [husband] had indeed ended their relationship and that nothing she could do would make him reconsider his decision to have nothing to do with her except where their [child] was concerned. And on November 16 she filed this case.

{¶20} The magistrate further found that wife did not file the CPO petition to "get relief from [husband's] behavior and to protect herself, but to retaliate against him for ending their intimate relationship of over three years." In filing the petition for CPO, the magistrate noted that wife was attempting to deprive husband access to their child without any legal justification. The magistrate therefore concluded that the petition was filed to merely harass or maliciously injure husband, in violation of R.C. 2323.51(A)(2)(a)(i).

{¶21} The foregoing determinations were premised upon the magistrate's decision in the underlying CPO case. Those findings were not objected to and were eventually adopted by the trial court. Because the trial court's findings and conclusions in the instant matter were based upon its conclusive determinations in the judgment

8

denying wife's petition for a CPO, we conclude the trial court's judgment that wife engaged in frivolous conduct is consistent with the manifest weight of the evidence. *See Dressler Coal Co. v. Division of Reclamation, Ohio Dep't of Natural Resources*, 23 Ohio St.3d 131, 136 (1986) (observing the doctrine of res judicata provides that a judgment of a court, directly adjudicating points of law or fact, is conclusive between the same parties or their privies whether in the same matter or a separate action.) We therefore hold the trial court did not abuse its discretion in adopting the magistrate's decision that the petition for CPO was filed merely to harass or maliciously injure husband in violation of R.C. 2323.51(A)(2)(a)(i).

{¶22} Notwithstanding the foregoing, wife contends that conduct only becomes frivolous when the expectation of finding evidence in support of an action is unreasonable. Because, she asserts, she had a concern for her safety that prompted her to seek the CPO, she provided reasonable evidence for the petition. Given our conclusion that the trial court did not err in finding frivolous conduct pursuant to R.C. 2323.51(A)(2)(a)(i), evaluating wife's argument would be an advisory exercise.

{¶23} Wife's argument is a challenge to the trial court's conclusion that she violated R.C. 2323.51(A)(2)(a)(iii), i.e., that she had no evidentiary support for her petition. Because we have already concluded the record supports the trial court's conclusion that wife's conduct was frivolous in violation of R.C. 2323.51(A)(2)(a)(i), and that determination is sufficient, unto itself, to affirm the trial court's judgment, we need not address the remaining bases cited by the trial court in support of its judgment. In short, our affirmance of the trial court's conclusion that wife filed the petition for CPO to merely harass or maliciously injure her ex-husband renders any additional analysis of the trial court's remaining legal conclusions moot.

9

{¶24} The dissent makes several points that deserve attention. First, in its opinion, the dissent maintains the original judgment adopting the magistrate's findings denying the petition for a CPO was not a final order because the issue of attorney fees and further hearing on appellee's purported violation of the ex parte order were still pending. We need not address whether the original substantive decision finding appellant was not entitled to the CPO, adopted by the trial court, was a final appealable order. Appellant did not object to the magistrate's findings and conclusion. Accordingly, even if the judgment under consideration rendered the previous judgment final, any issue relating to the initial findings and conclusions is waived. Appellant appears to concede she waived the issue because she neither ordered a transcript of those proceedings nor does she argue, on appeal, that the trial court erred in adopting the decision denying her petition.

{¶25} Despite the conspicuous absence of any argument from appellant, the dissent also contends the frivolous conduct finding is against the manifest weight of the evidence *because* the trial court's determination that appellant was not entitled to the CPO was unreasonable. It is unclear, however, how the original judgment can be deemed unreasonable when there is no transcript of those proceedings in this court's record. While the record includes transcripts from appellant's ex parte hearing and her deposition, these items do not provide *any* insight into the testimony taken at the full hearing.

{¶26} The only facts available to this court from the full hearing on the CPO are contained in the magistrate's decision and the trial court's adoption of that decision. In that decision, the magistrate specifically finds appellant possessed no colorable basis in fact or law for filing the petition, but did so merely to retaliate, harass, or maliciously

10

injure appellee. It is unclear how the dissent can deem the substantive decision and judgment unreasonable when there is no evidence in this record against which the findings and conclusions can be compared. The dissent essentially maintains the magistrate erred in denying the petition. Without a record of the proceedings, however, it is impossible to assess the quality of the evidence the magistrate heard, let alone evaluate the manner in which the magistrate arrived at his decision. We are confounded by the approach taken by the dissent.

{¶27} Furthermore, the dissent considers multiple sources outside this court's record in an attempt to impugn the magistrate's denial of the CPO. App.R. 9(A) states:

{¶28} "The original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court shall constitute the record on appeal in all cases."

{¶29} As indicated above, even if the issues were not barred by res judicata or otherwise waived, appellant did not provide a copy of the CPO hearing transcript in the appellate record. Undiscouraged, the dissent resorts to various sources dehors the appellate record in an apparent effort to paint appellee as an unstable and violent individual. It is axiomatic that "* * * [a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State* v. *Ishmail*, 54 Ohio St.2d 402 (1978), paragraph one of the syllabus.

{¶30} Because there was no transcript prepared, the dissent attempts to create its own tendentious version of the evidence by selectively identifying information outside the record to support its one-sided conclusion. The dissent does not know and has no

11

ability to access the evidence that led to the magistrate's conclusion, so it has elected to create its own record in violation of App.R. 9. As a reviewing court, we must evaluate the record before us and assess arguments challenging particular judgments in light of that record. The dissent has gone outside the record to act as an advocate, creating arguments that were never asserted on appeal.

{¶31} The record before this court is clear: The magistrate found, in a very detailed decision, that appellant was not entitled to a CPO. And, after holding a hearing on sanctions, based upon its previous decision, found appellant had engaged in frivolous conduct. As discussed above, the record supports this decision and the trial court did not abuse its discretion in adopting that decision.

{¶32} Wife's first assignment of error lacks merit.

{¶33} For her second assignment of error, wife alleges:

{¶34} "The trial court erred by assessing attorney fees against petitioner under O.R.C. 2323.51 as that section of the Ohio Revised Code does not apply to the awarding of attorney fees for petition for domestic violence."

{¶35} Wife contends that R.C. 2323.51 does not apply to an award of attorney fees for a domestic violence civil protection order filed pursuant to R.C. 3113.31. Wife points out that R.C. 2323.51 provides for an award of attorney fees against one that has engaged in frivolous conduct in the "filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action." She argues, however, a petition pursuant to R.C. 3113.31 is not an "ordinary" civil matter. Wife notes that such proceeding does not seek redress of a legal wrong, enforcement of a legal right, or punishment of a public offense; rather, a petition for a domestic violence civil protection order, by definition, seeks protection, not civil gain. Thus, she concludes, the

12

mechanisms set forth under R.C. 2323.51 are not available to parties litigating an R.C. 3113.31 petition.  We do not agree.

{¶36}  The Supreme Court of Ohio has recently commented that "[a] 'civil action' has been defined as an '[a]ction brought to enforce, redress, or protect private rights. In general, all types of actions other than criminal proceedings." *Estate of Johnson v. Randall Smith, Inc.*, 135 Ohio St.3d 440, 2013-Ohio-1507, ¶15, quoting *Black's Law Dictionary* 222 (5th Ed.1979).  This definition envelops the relief sought in a petition for a domestic violence civil protection order; namely, protection of the person, oneself, or one's child.

{¶37}  Moreover, courts have specifically stated that "a domestic violence civil protection order *is a civil proceeding*."  Luna-Corona v. Esquivel-Parrales, 12th Dist. Butler No. CA2008-07-175, 2009-Ohio-2628, ¶42, citing *Moore v. Moore*, 5th Dist. Licking No. 02CA0037, 2003-Ohio-1382, ¶26.  And, Civ.R. 2 provides that "[t]here shall be only one form of action, and it shall be known as a civil action."

{¶38}  The General Assembly's purpose in enacting R.C. 2323.51 was "to provide a remedy to those harmed by frivolous conduct."  *Soler v. Evans, St. Clair & Kelsey*, 94 Ohio St.3d 432, 436 (2002).  Adopting wife's position would not afford protection against frivolous conduct in the context of the filing of a petition for domestic violence CPO.  This would be contrary to the remedial purpose for which the statute was codified.  In effect, it would leave no means for a respondent, aggrieved by a petitioner's frivolous conduct in an R.C. 3113.31 case, to seek sanctions for, or recoup the expenses of defending against such conduct.  We decline to adopt this position.

{¶39}  The dissent maintains that because the petition filed pursuant to R.C. 3113.31 is a "special proceeding," it is not a "civil action" and therefore falls outside the

13

operation of R.C. 2323.51. While a petition filed under R.C. 3113.31 is a special proceeding, the dissent's interpretation would operate to remove all special proceedings from the operation of the frivolous conduct statute. Such a consequence would be problematic insofar as it would permit a party to file a petition based upon false allegations or merely an intention to harass without concern that his or her conduct might be sanctionable as frivolous. Moreover, would-be respondents would be without a powerful mechanism to deter such abuses of the legal process.[2]

{¶40} Additionally, the dissent's reading would require a trial court to tolerate such abuses where, in "ordinary" proceedings, such actions would be subject to greater court regulation. It would be incongruous to divest the trial court of the authority, inherent or otherwise under statute and the rules applicable to ordinary civil actions, to discourage and sanction frivolous conduct simply because a matter falls under the rubric of a special proceeding. We recognize the conceptual point made by the dissent, but maintain the remedial purpose behind R.C. 2323.51 contemplates its operation in all civil proceedings, whether "special" or "ordinary." This will not have a chilling effect discouraging actual victims to come forward; quite the contrary, it merely discourages using the legal system as a forum for gamesmanship or harassment. We therefore disagree that R.C. 3113.31 proceedings are beyond the reach of R.C. 2323.51.

{¶41} The dissent further asserts R.C. 2323.51 is inapplicable to the instant matter because R.C. 3113.31(J) provides that no court shall "charge any fee * * * in

---

2. We acknowledge that Civ.R. 11 provides an available means for an aggrieved party to seek sanctions in a special proceeding. That rule, however, applies to either an attorney or a pro se litigant. Appellant, in this matter, was represented by counsel. And, although she was technically pro se when she filed the petition for CPO, the balance of the fees incurred by appellee occurred while she *was* represented. Because there is nothing in the record to suggest appellant's attorney engaged in any misconduct in representing her, Civ.R. 11 would not be a viable sanctioning device for the conduct at issue in this matter.

14

connection with the filing of a petition pursuant to this section * * *." R.C. 3113.31(J) precludes a court from charging a petitioner filing fees and other costs associated with filing a petition for a CPO. A judgment imposing a sanction for frivolous conduct, however, is not a "charge" by the court. We find the dissent's suggestion that subsection (J) prohibited the court's action unpersuasive.

{¶42} For the reasons discussed above, we hold that an R.C. 3113.31 petition for a CPO is a civil proceeding out of which a party may use the mechanisms set forth under R.C. 2323.51 as a means to obtain a remedy for his or her adversary's frivolous conduct.

{¶43} Wife's second assignment of error lacks merit.

{¶44} For her third assignment of error, wife asserts:'

{¶45} "The trial court erred in deciding the question of the dischargeability of a debt under section 523(a)(6) of the Bankruptcy Code as that question was not properly before the court."

{¶46} Wife contends that the issue of the dischargeability of attorney fees relating to the proceedings leading to the denial of her petition for a CPO was not properly before the trial court. Furthermore, wife's argument suggests that she experienced a due process violation because, with no motion before the court, she had no opportunity to research, respond, or reply to the issue of dischargeability. Thus, she claims, the court exceeded its jurisdiction and violated her right to be heard in addressing the question of dischargeability. We do not agree.

{¶47} On August 16, 2011, counsel for husband filed a "Motion to Dissolve Stay of the Court and Restore Case to Active Docket." In that motion, counsel asserted that husband's claim for attorney fees was neither listed nor scheduled and husband did not

15

have actual knowledge of the bankruptcy case until after the order of discharge was entered. In light of these points, counsel claimed that husband's motion for attorney fees under R.C. 2323.51 was not discharged. Husband further advised the court of its jurisdiction to determine the dischargeability of the potential debt. Thus, counsel requested the court to restore the matter to the active docket, determine that wife failed to list or schedule husband as a creditor, and "*determine whether [husband's] Motion for Attorney's Fees, Court Costs and Other Reasonable Expenses Pursuant to O.R.C. 2323.51 and Civil Rule 11 were discharged in [wife's] Bankruptcy.*" (Emphasis added).

{¶48} Furthermore, at the hearing on attorney fees, the magistrate acknowledged that wife's R.C. 2323.51 motion necessarily implicated the issue of the dischargeability of the potential debt.

{¶49} The record demonstrates that counsel for husband raised the issue of dischargeability, set forth the governing law on the court's jurisdictional ability to resolve the issue, and requested the court make a determination that the debt was not dischargeable, in the August 16, 2011 motion to dissolve the bankruptcy stay. Wife was consequently on notice that the issue was before the court well before the November 8, 2011 hearing on the R.C. 2323.51 motion. Wife had the opportunity to respond to husband's request and be heard, either through a response memorandum in opposition to the motion to lift the stay or at the R.C. 2323.51 hearing. Wife's failure to take advantage of those opportunities rests upon her, and not the trial court. We therefore discern no error in the trial court's disposal of the dischargeability-of-debt issue.[3]

{¶50} Wife's third assignment of error lacks merit.

{¶51} For her fourth assignment of error, wife argues:

---

3. Kristen does not take issue with the trial court's substantive legal determinations regarding the non-dischargeability of the debt. Thus, we shall not address this issue.

16

**{¶52}** "The trial court erred in its determination that the respondent-appellee/cross-appellant satisfied his burden in demonstrating reasonable attorney fees."

**{¶53}** In an action for attorney fees, the burden of proving the time billed was fairly and properly used as well as the burden of showing the reasonableness of work hours devoted to the case rests on an attorney. *In re Guardianship of Spagnola*, 195 Ohio App.3d 719, 2011-Ohio-5602, ¶14 (11th Dist.) A trial court is required to base its reasonableness analysis upon the actual value of the necessary services performed, and the record must disclose some evidence to support the court's decision. *Id.* citing *Climaco, Seminatore, Delligatti & Hollenbaugh v. Carter*, 100 Ohio App.3d 313, 323 (10th Dist.1995).

**{¶54}** When awarding attorney fees, the trial court should first calculate the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 145, (1991). Once the court has arrived at a "lodestar" amount, it may modify that amount by application of the reasonableness factors listed in Prof.Cond.R. 1.5(a). *Bittner*, *supra*. Those factors are as follows:

**{¶55}** (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by

the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; (8) whether the fee is fixed or contingent. Ohio Rules of Professional Conduct 1.5.

**{¶56}** Where a court is empowered to award attorney fees, an appellate court will not interfere with the decision "[u]nless the amount of fees determined is so high or so low as to shock the conscience[.]" *Bittner*, *supra*, at 146; *see also Brancatelli*, *supra.*

**{¶57}** In this matter, wife contends husband's counsel failed to set forth sufficient evidence that the services they performed were reasonable and necessary. Thus, she maintains, the trial court did not have a proper basis for granting the award.

**{¶58}** In his decision, the magistrate identified all applicable Rule 1.5 factors, discussed their relevance to the case, and, from this, the magistrate determined husband's counsel was entitled to fees generated from all billed hours, set forth on his fee statement, at the rate to which counsel testified he charged, for work he did defending the CPO.[4] To wit, $22,852.50.

**{¶59}** The fee statement provided by husband's counsel set forth general information regarding counsel's work and a designation of the time spent for such work. And, at the motion hearing, counsel testified to his hourly fee ($300 per hour), his significant experience as an attorney practicing primarily in the area of domestic relations law (32 years with 95% of his practice dealing with domestic matters).

---

4. The magistrate determined that the court could only award fees incurred in the course of the underlying CPO action. As a result, he concluded that any fees incurred in connection with the prosecution of the R.C. 2323.51 motion were not awardable. Neither party objected to this legal conclusion and the court adopted that analysis in its judgment entry. Therefore, we shall not consider the legal propriety of that ruling.

18

Although counsel did not specifically explore all the entries in the fee statement and discuss the reasonableness of the work, the magistrate was able to consider the nature of the work devoted to the case, the time spent, and even compare the designations with the pleadings in the record. From this, the magistrate could conclude that the amount of time spent and the work devoted to the case was both reasonable and necessary given counsel's hourly fee and his experience.

{¶60} We acknowledge that, generally, merely submitting an attorney's itemized bill is insufficient to establish the reasonableness of the amount of work billed. *United Assn of Journeyman and Apprentices of the Plumbing and Pipe Fitting Industry, Local Union No. 776 v. Jack's Heating, Air Conditioning & Plumbing, Inc.*, 3d Dist. Hardin No. 6-12-06, 2013-Ohio-144, ¶25; *Whitaker v. Kear*, 123 Ohio App.3d 413, 424, (4th Dist.1997); *Climaco, Seminatore, Delligatti & Hollenbaugh*, *supra*, at 324. And, frequently, a party will offer expert testimony to establish that the hours charged were reasonable in light of the litigation's particular facts. *See e.g. Hawkins v. Miller*, 11th Dist. Lake No. 2011-L-036, 2011-Ohio-6005, ¶28 (affirming award of attorney fees where expert testified to the amount of time and hourly rate charged); *Whitaker*, *supra*, at 424-25 (affirming trial court's finding that evidence was sufficient to prove reasonableness of fee request where expert testified to the reasonableness of the time spent on the litigation).

{¶61} In this case, however, counsel did not merely submit a fee statement relating to the hours spent; rather, counsel's statement included itemized notations of the activities for which he was billing, all of which related to the defense of the petition for a CPO. The details in the fee statement were sufficient to permit the magistrate to render an informed opinion regarding the reasonableness of the fees. This, in

19

conjunction with the magistrate's careful analysis of the Rule 1.5 factors, demonstrates that the decision to award counsel attorney fees was not an abuse of discretion. We therefore hold the magistrate did not err in concluding fees submitted via the statement were reasonable.

{¶62} Wife's fourth assignment of error lacks merit.

{¶63} For his assignment of error on cross-appeal, Husband asserts:

{¶64} "The trial court committed prejudicial error in overruling the Magistrate's Decision and decreasing the attorney fee award granted to Ricardo Lozada in the Magistrate's Decision of December 9, 2011 upon a finding that Appellant/Cross Appellee, Kristen Lozada, engaged in frivolous conduct within the meaning of R.C. 2323.51."

{¶65} As indicated above, the trial court is vested with considerable discretion in awarding attorney fees. *See e.g. Bittner*, *supra*. Save a clear abuse of discretion, an appellate court may not reverse the trial court's judgment on attorney fees. *Sertz v. Sertz*, 11th Dist. Lake No. 2011-L-063, 2012-Ohio-2120, ¶48.

{¶66} In this case, the trial court reduced the reasonable amount of attorney fees awarded by the magistrate from $22,852.50 to $15,000. The trial court decreased the amount based upon its conclusion that the award was "too much for a case of this nature." Given the considerable discretion a trial court possesses in determining reasonable attorney fees, we find no error.

{¶67} This case was a domestic violence CPO, certainly not an uncommon form of litigation to defend. Further, the record demonstrates that counsel's fee-per-hour rate was higher than the fee charged for similar services in this locality. There was no indication that counsel was under any time limitations or that he was precluded from

20

engaging in other work while representing appellee. Given these points, we hold the trial court's downward deviation from the magistrate's decision was neither unreasonable nor inconsistent with the record.

{¶68} Both the magistrate's decision and the trial court's judgment comported with reason as well as the record. Neither the magistrate nor the trial judge, consequently, transcended the considerable discretion possessed by each in drawing their respective conclusions. Hence, both decisions, although substantively disparate, were individually and independently reasonable in the context of the proceedings sub judice.

{¶69} Husband's assignment of error on cross-appeal is without merit.

{¶70} For the reasons discussed in this opinion, the trial court's judgment adopting the magistrate's decision is affirmed.

TIMOTHY P. CANNON, P.J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶71} Finding merit in wife's first and second assignments of error, I would reverse on that basis, and deem her remaining assignments of error, and husband's cross assignment of error, moot.

{¶72} The issue in the case is one of first impression in Ohio and perhaps throughout the country. The majority is upholding a lower court's award of attorney fees to be paid by appellant wife in a civil domestic violence proceeding to her ex-husband.

21

The lower court's award was made pursuant to R.C. 2323.51, the civil attorney fees statute. The fees in this instance are to reimburse the husband for wife's alleged frivolous conduct in filing a petition for a domestic violence civil protection order.

{¶73} Ohio created R.C. 3113.31, in an attempt to provide relief to victims of domestic violence. Furthermore Congress authorized the Violence Against Women Act of 1994 ("VAWA"), Title IV, 40001 – 40703 of the Violent Crime Control and Law Enforcement Act of 1994, H.R. 3355, signed into law as Pub.L. 103–322 on September 13, 1994 (codified in part at 42 U.S.C. 13701 through 14040).

{¶74} It goes without saying that victims of domestic violence should not fear punishment or humiliation by the legal system supposedly designed to protect them. They cannot fear reprisal when coming forward to file a petition after having already been victimized. The entirety of R.C. 3113.31, as well as VAWA, acknowledge the fragility and difficulty of victims in coming forward and build in safeguards to prevent such a result. The holding of the trial court and the majority of this court is unsupported in law and public policy, and invents a penalty for filing a petition for a civil protection order when none exists at law. The award of attorney fees in a domestic violence matter undermines 35 years of enabling legislation giving access to the courts for victims of domestic violence in Ohio.

{¶75} I commence with wife's second assignment of error, finding it dispositive. It reads: "The trial court erred by assessing attorney fees against petitioner under O.R.C. 2323.51 as that section of the Ohio Revised Code does not apply to the awarding of attorney fees for petition for domestic violence."

{¶76} As noted by the majority, we address questions of law de novo. Therefore, whether the statute allows for fees to be awarded is a legal question subject

22

to de novo review. A domestic violence petition is not an "ordinary" civil matter and as such an award of attorney fees is inappropriate.

{¶77} The General Assembly, in drafting R.C. 3113.31, was deliberate in not adding a fees provision to the domestic violence statute. It did not create a separate cause of action for recovery of fees anywhere in the law. Case law is well settled that a domestic violence action under 3113.31 is designated by the legislature as a "special" civil proceeding. The General Assembly took great care in designing a law that would address and encourage victims to come forward when they were in fear or being threatened, without fear of reprisal. The General Assembly created several sections which entitle victims to a domestic violence advocate, as well as creating a qualified immunity against reprisal by a perpetrator, a court, or any other system partner.

{¶78} This legislation is not merely an "ordinary" civil proceeding as determined by the trial court and the majority. This writer asserts the holding of the majority violates the law and public policy promulgated to protect victims of domestic violence. The award of attorney fees, despite an obvious lack of a provision for them in the statute, is without legal support under R.C. 2323.51(a)(2)(a)(i), (ii), and (iii). Further, 42 U.S.C. 3796gg-5(a)(1) and 3796hh(c)(1)(D) stipulate that victims be exempted from such costs.

{¶79} R.C. 3113.31, the domestic violence statute, is civil *in nature*. *See Oliver v. Johnson*, 4th Dist. Jackson No. 06CA16, 2007-Ohio-5880, ¶7. However, R.C. 3113.31 does not create a "'civil action.'" *Id.* at ¶9, 11. According to the Ohio Rules of Civil Procedure, there is only one form of action, known as a "civil action." Civ.R. 2. "A civil action is commenced by filing a complaint * * *." Civ.R. 3(A). According to the Ohio Revised Code, an "action" is defined as "* * * an *ordinary* proceeding in a court of justice, involving process, pleadings, and ending in a judgment or decree, by which a

23

party prosecutes another for the redress of a legal wrong, enforcement of a legal right, or the punishment of a public offense." (Emphasis added.) R.C. 2307.01.

{¶80} "Because an action/civil action is an 'ordinary proceeding', it is distinguishable from 'special proceedings', which continue to exist in spite of the adoption of Civ.R. 2. See, 1 Ohio Jurisprudence 3d (1977), Actions, Section 18.

{¶81} "A special proceeding is one specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity. See, R.C. 2505.02(A)(2) and *Polikoff v. Adam* (1993), 67 Ohio St.3d 100, 105, * * *. Where the law confers a right and authorizes a special application to a court to enforce it, the proceeding is 'special' as opposed to 'ordinary'. *Id.* at 105, quoting *Schuster v. Schuster* (1907), 84 Minn., 403, 407 * * *." (Parallel citations omitted.) *Oliver, supra,* at ¶9-10.

{¶82} "The General Assembly enacted the domestic violence statute R.C. 3113.31 in 1978 to specifically authorize the issuance of protection orders. See, *Felton v. Felton* (1997), 79 Ohio St.3d 34, 37 * * *. [R.C. 3113.31] meets the definition of a special statutory proceeding and thus cannot be an 'ordinary proceeding * * *[.]'" (Parallel citation omitted.) *Oliver, supra,* at ¶11.

{¶83} Thus, a R.C. 3113.31 domestic violence petition is not an "ordinary" civil proceeding as the petitioner seeks protection, not civil gain. It logically follows that a domestic violence petition does not fall under the mandates of R.C. Chapter 2323 from which the claim for attorney fees in this case arises. In fact, the legislature has differentiated R.C. 3113.31 from ordinary civil actions by indicating that no court shall assess any "fee, cost, deposit, or money in connection with the filing of a petition pursuant to this section * * *." R.C. 3113.31(J). The language in the statute is deliberately broad, indicating the preference in the statute for preventing serious harm

and death to victims. This accounts for the low standard of proof involved: fear of harm or mental distress. Even a mere aggravated trespass can suffice for issuing a civil protection order under the statute, and the burden is only a preponderance of the evidence.

{¶84} The filing of a domestic violence petition is a statutorily defined cause of action which prohibits the court from assessing fees. The issue is not whether a petitioner has probable cause to file the complaint because the statute, as written, allows everyone to file under a subjective feeling of duress or fear. It is then up to the trial court whether it will grant the relief requested based upon an imminent threat. The statute does not allow the trial court to read the mind of the petitioner at the time of the filing, but to take ex-parte testimony and supporting affidavits to make its own determination. The petitioner does not invent the cause of action as it is already in statute. The procedure and the standards are statutorily defined by law.

{¶85} I agree the statute sets a low bar for petitioners, and this has caused consternation and comment in the literature, as it may give respondents little remedy to redress issues, including eviction from joint premises or denial of child companionship rights. The legislature has not seen fit to address these disparities. The trial court's only remedy under the statutory scheme, if the court finds a petitioner's testimony and evidence unworthy or untruthful, is denial of the order, not granting sanctions or putting the petitioner on trial which would defeat and deter victims coming forward. The purpose of the statute is not to punish petitioners, unlike the finding of the trial court, but to prevent further harm to them. The majority's decision further punishes the alleged victim.

**{¶86}** Wife had a statutory right, and the law encouraged her, to file a petition for a civil protection order in the event she was in fear, felt harassed or under mental distress. The legislature drafted the domestic violence statutes broadly to protect victims from serious harm given the data on the cycle of domestic violence, which indicates the risk often grows greater with time. The purpose of both the Ohio statute and VAWA is to encourage potential victims to come forward before it is too late, and they suffer serious injury, or worse.

**{¶87}** There is no basis in law for awarding attorney fees under R.C. 2323.51 on a petition for a domestic violence civil protection order.

**{¶88}** While I believe wife's second assignment of error dispositive, I must also respectfully disagree with the majority's conclusion the first assignment of error lacks merit. It reads: "The trial court's finding of a sanction of attorney fees is against the manifest weight of the evidence."

**{¶89}** I disagree with the majority's conclusion that wife's failure to object to the findings made in the magistrate's decision of February 8, 2011 waived this issue, or moves it to the realm of res judicata. The magistrate's initial decision was interlocutory, until all issues were resolved – i.e., whether husband should be awarded attorney fees. "The doctrine of res judicata does not apply to interlocutory orders." *Beck-Durell Creative Dept., Inc. v. Imaging Power, Inc.*, 10th Dist. Franklin No. 02AP-281, 2002-Ohio-5908, ¶16, citing *Duff v. Donald M. Colasurd Co. L.P.A.*, 10th Dist. Franklin No. 91 AP-316, 1991 Ohio App. LEXIS 4421 (Sept. 19, 1991). The finding of frivolous conduct, allegedly justifying the award of attorney fees to husband, was first made by the magistrate in his decision filed December 9, 2011, not in the February 8, 2011 decision. Wife properly objected to the latter decision, which the trial court approved and adopted,

26

as modified, August 8, 2012. The instant appeal involves the August 8, 2012 judgment of the trial court. The majority makes much ado about the lack of a transcript of the initial hearing and the fact that wife did not immediately appeal the finding of no domestic violence. There is so much other evidence which the majority ignores, including the transcripts of the ex parte hearing and the sanctions hearing, wife's affidavit, and her deposition transcript. This is clearly enough to create a record on appeal.

{¶90} The finding of frivolous conduct, upon which the award of attorney fees is primarily based, arises from her ultimate failure to obtain the civil protection order. In considering this assignment of error, I agree with the majority that we are largely confined to the assignment of error, as well as the pleadings and other materials contained in the record, since wife failed to file any transcript of the hearing. However, I respectfully conclude there is sufficient information contained therein to undermine the conclusion that wife's conduct in seeking the civil protection order was frivolous.

{¶91} The magistrate refers to the necessity of incurring physical injury and mentions that, "since the divorce the respondent has not threatened any physical violent act against the petitioner." This appears to be tacit acknowledgement of past violence. Furthermore, the finding assumes physical violence is a requirement for obtaining an order. It is not. However, a prior finding of domestic violence would explain why wife might be afraid of husband. She testified to physical abuse "during the marriage" and "her continual fear." *In fact,* there was a prior finding of domestic violence by husband against wife. *Lozada v. Lozada*, Cuyahoga C.P. No. DR-01-283747 (Dec. 19, 2001). [5]

---

5. "'[C]ourts may sua sponte take judicial notice of proceedings in other courts if they relate directly to the matters at issue.'" *United States v. Evans*, 690 F.3d 940, 943 (8th Cir.2012), quoting *Conforti v. United States*, 74 F.3d 838, 840 (8th Cir.1996).

27

**{¶92}** In his findings the magistrate states that, "[r]espondent never at any time since the divorce used physical force or threat of physical force to compel the petitioner to have sex with him." Implicit in the magistrate's finding is that wife was subjected to physical force to compel sex – just not recently.

**{¶93}** The magistrate cites at one point that the wife "never asked the respondent to stop contacting her," evidently as justification for the view she welcomed her treatment. A petitioner for a civil protection order does not have to give the respondent notice his or her behavior is unacceptable or threatening before filing the complaint. Further, the record reflects the parties have a shared parenting plan requiring them to communicate for the child's best interest. Why would either of them, as suggested by the magistrate, not communicate with the other? They were under court ordered parenting plan to communicate.

**{¶94}** The record before us does indicate that husband, as a retired police officer, was trained in the use of force, and owned several guns. During one confrontation in wife's driveway she stated, "Are you going to get your gun and shoot me like you shot those kids?" The magistrate justifies and minimizes an incident where husband, after his retirement, appears to have brought a gun to a Cleveland bar at around 11:30 p.m. on September 28, 2009. Reports stated that he and the bar owner opened fire on two men trying to rob the bar. *See, e.g.*, John Caniglia, *Former Cleveland cop shoots teen robbers at bar*, http://www.cleveland.com (accessed May 27, 2014); Donna J. Miller, *Robbery suspects shot by ex-cop and bar owner identified*,

http://www.cleveland.com (accessed May 27, 2014). This clearly provides some explanation for wife's sense of fear. [6]

{¶95} A useful reference in these cases is Brigner, *The Ohio Domestic Violence Benchbook: A Practical Guide to Competence for Judges & Magistrates* (2d Ed.2003) released by the Family Violence Prevention Center at the Ohio Office of Criminal Justice Services. Contained within the benchbook is a lethality check list for domestic relations proceedings. *Id.* at 65. Of note, the following behaviors – also described under oath in the record – are predictive of future violence: past use of weapons; threats to abduct a child; assaults on others; violence or threats in public; prior arrests for domestic violence; prior findings for domestic violence; the victim is separated or recently separated from the partner; the defendant has access to weapons and weapons' training. Several of these factors are present in this case, yet were disregarded and ignored by the trial court and the majority.

{¶96} Ultimately, the issue is *not* whether wife was correct in her fear of potential domestic violence: it is whether there was some reasonable basis for her fear. The magistrate's own decision, matters which this court can take judicial notice of, and which relate to items referenced in the record, and the extensive but incomplete record, including wife's affidavit and deposition, the pleadings, and the transcript of the ex parte hearing, indicate her fear was not *baseless*. Thus, her conduct in seeking a civil protection order should not have been deemed frivolous, and this finding further punishes wife.

---

6. "Courts may take judicial notice of publications * * * to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.' *Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2001); *accord Heliotrope Gen. Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (taking judicial notice 'that the market was aware of the information contained in news articles submitted by the defendants.')." *Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir.2010).

{¶97}  I strongly dissent.