JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Plaintiff-appellant, Joseph N. Wheeler ("Plaintiff"), appeals the court's order imposing sanctions against him for frivolous conduct. After reviewing the facts of the case and pertinent law, we reverse.
 {¶ 2} In October 1996, Plaintiff bought a new Chevrolet Suburban ("the SUV"), which was financed through Defendant, Best Employees Federal Credit Union ("Best"), and included disability insurance through Defendant-appellee, Madison National Life Insurance Company ("Madison"). Once in 1997 and twice in 1998, Plaintiff was injured rendering him disabled, which triggered Madison to take over the SUV payments. Plaintiff submitted the required monthly paperwork to Madison, and Madison made payments to Best through January 2001. According to Plaintiff, at that time it was his understanding that the SUV loan was paid in full, and he stopped submitting the claim forms to Madison. In turn, Madison stopped making payments to Best.
 {¶ 3} According to the record, there is a dispute over the monthly payment terms of the loan. Plaintiff alleges that Best sent him a payment booklet with 48 monthly payment slips for $757.75 each. Best does not dispute this; however, *Page 4 
Best alleges it made a mistake in the pay-off terms of the loan, and a balance of $6,028.50 was due after the January 2001 payment was made. According to the record, Madison sent letters to Plaintiff on March 7, 2001 and April 10, 2001, stating that it was ceasing its payments to Best and closing Plaintiff's file. Additionally, Best sent a letter to Plaintiff on August 31, 2001, stating as follows: "This letter is to inform you that our insurance company, Madison National Life, has not received your completed claim form as requested several times. At this time you have 7 days to respond to this letter or the car in your possession must be turned in to the credit union. In the event this does not happen we will have the car picked up. This important matter needs your immediate attention."
 {¶ 4} On February 1, 2002, Best repossessed the SUV. On August 22, 2002, Plaintiff filed a complaint against Best and Madison, alleging deceptive trade practices, breach of duty of good faith and fair dealing, equitable estoppel, conversion, breach of contract, and damage to his credit history.[1] Discovery, including depositions, and settlement negotiations ensued, and in July 2003, Madison paid Best $6,028.50 "as a gesture of goodwill and in an attempt to settle Plaintiff's claims * * *." Further attempts to settle the case with Plaintiff were unsuccessful. *Page 5 
 {¶ 5} Over the next few years, Plaintiff was represented by three different attorneys in the ongoing litigation. Present counsel entered an appearance in August 2007 — five years after the original complaint was filed.
 {¶ 6} Trial was set for August 4, 2008, and that same day, the court addressed various motions in limine filed by Best and Madison (collectively, "Defendants") that had not been ruled upon. It was established that documents identified at Plaintiff's deposition, which was held May 15, 2003, had never been produced to Defendants. Defendants claimed to have never seen the documents, which dealt with Plaintiff's compensatory damages, before the day of trial, and moved to exclude them from the proceedings. The court granted this motion. In addition, the court granted Defendants' motion to exclude evidence of emotional or psychological damages and Defendants' motion to exclude mention of punitive damages during the proceedings.
 {¶ 7} The day after these rulings, on August 5, 2008, Plaintiff voluntarily dismissed his case without prejudice pursuant to Civ. R. 41(A)(1).
 {¶ 8} On August 14, 2008, Madison moved the court for sanctions against Plaintiff. On September 3, 2008, the court granted the motion for sanctions, stating as follows: "Judgment in amount of $1,708.16 for deft. Madison National Life Ins. Co. Inc. as reimbursement awarded to deft. necessitated by ptlfs. frivolous conduct." *Page 6 
 {¶ 9} It is from this order that Plaintiff now appeals.[2] Plaintiff assigns three errors for our review. We first address Plaintiff's third assignment of error, which states as follows:
 {¶ 10} "III. The trial court lacked jurisdiction to impose costs as a sanction against Appellant after Appellant had voluntarily dismissed his claims without prejudice and had not re-filed them."
 {¶ 11} We first note that we apply a mixed standard of review to appeals concerning sanction awards pursuant to R.C. 2323.51. Riston v.Butler (2002), 149 Ohio App.3d 390, 397 (holding that "`the inquiry necessarily must be one of mixed questions of fact and law.' Accordingly, purely legal issues require no deference to the trial court's determination, while some deference must be given to the trial court's factual determinations").
 {¶ 12} In State ex rel. Hummel v. Sadler (2002), 96 Ohio St.3d 84, 88, the Ohio Supreme Court held that "despite a voluntary dismissal under Civ. R. 41(A)(1), a trial court may consider certain collateral issues not related to the merits of the action." Sanctioning a party for frivolous conduct is considered a collateral proceeding, and trial courts retain jurisdiction to make this determination under R.C. 2323.51
subsequent to a case being voluntarily *Page 7 
dismissed. See Dyson v. Adrenaline Dreams Adventures (2001),143 Ohio App.3d 69, 72.
 {¶ 13} Accordingly, the court in the instant case retained jurisdiction to rule on Madison's motion for sanctions after Plaintiff dismissed his case without prejudice under Civ. R. 41(A)(1).
 {¶ 14} Plaintiff's third assignment of error is overruled.
 {¶ 15} We next address Plaintiff's second assignment of error, which states:
 {¶ 16} "II. The trial court erred by imposing sanctions against Appellant under R.C. 2323.51 without conducting an evidentiary hearing."
 {¶ 17} R.C. 2323.51(B)(2) states that a court may award sanctions against a party to a civil action "only after the court does all of the following:
 {¶ 18} "(a) Sets a date for a hearing * * * to determine whether particular conduct was frivolous, * * * [if so], whether any party was adversely affected by it, and * * * if an award is to be made, the amount of that award;
 {¶ 19} "(b) Gives notice of the date of the hearing * * *; [and]
 {¶ 20} "(c) Conducts the hearing described in division (B)(2)(a) of this section in accordance with this division, [and] allows the parties and counsel of record involved to present any relevant evidence at the hearing * * *."
 {¶ 21} In Pisani v. Pisani (1995), 101 Ohio App.3d 83, 87, this Court held that the "plain meaning of this language is that an award of * * * sanctions for frivolous conduct may only be made after a hearing." (Emphasis in original.) *Page 8 
Additionally, in Pisani, supra, this Court agreed with the analysis of the Fifth District Court of Appeals of Ohio in McKinney v. AultmanHosp. (Apr. 27, 1992), Stark App. No. CA-8603, quoting Annexation of18.23 Acres of Land v. Bath Twp. Bd. of Trustee (Jan. 11, 1989), Summit App. No. 13669 (George, J. concurring):
 {¶ 22} "When a frivolous conduct motion is filed, pursuant to R.C. 2323.51, the party against whom the motion is directed should be given an opportunity to respond, as with any motion. If the motion has merit, whether the party against whom it is directed responds or not, then the trial court must set a hearing date as provided in R.C. 2323.51(B)(2)(a). Such a hearing date provides an opportunity for each party to submit briefs and evidentiary material which may support their respective positions. The hearing is not required to be an oral hearing. Whether the hearing is to be conducted on the submitted matters or orally remains discretionary with the trial court. If the motion lacks merit, whether the party against whom it is directed responds or not, then no hearing date need be set in order for the trial court to deny the motion." (Internal citations omitted.)
 {¶ 23} In the instant case, it is undisputed that the court did not hold an R.C. 2323.51 hearing before it awarded sanctions against Plaintiff. While Plaintiff argues this was an abuse of the court's discretion, Madison argues that the court was not required to hold an oral hearing under the circumstances of this case. *Page 9 
 {¶ 24} Madison first argues that Plaintiff waived his right to appeal the sanction award because he did not oppose the motion for sanctions at the trial court level. This argument lacks merit because the court did not comply with the requirement of R.C. 2323.51 regarding a hearing before awarding sanctions. As is clearly stated in R.C. 2323.51(B)(2)(c), the hearing "allows the parties and counsel of record involved to present any relevant evidence * * *."
 {¶ 25} Madison next cites to Shields v. Englewood,172 Ohio App.3d 620, 2007-Ohio-3165, to support its argument that the court was not required to hold a hearing in the instant case. However,Shields can be distinguished from the case-at-hand. In Shields, the Paintiff's attorneys admitted to the court "that they had misrepresented the reason for the witnesses' failure to attend the prior hearing, conceding that his failure to appear was due to their failure to serve the subpoena at his proper address." Id. at ¶ 8. In response, the Defendant moved for sanctions for frivolous conduct. Nine days later, the court issued the following order:
 {¶ 26} "[T]he Motion for Sanctions filed herein by the Defendant on June 21, 2005 will be submitted for decision on July 15, 2005 as of 1:00 p.m. No oral hearing will be conducted unless requested by any party and approved by the Court in which event a definite date and time will be set.
 {¶ 27} "All memoranda and/or affidavits either in support of or in opposition to the motion must be filed by July 7, 2005, with Replies due on or *Page 10 
before July 14, 2005, with a copy delivered to the Court not later than twenty-four hours prior to the aforesaid date and time for submission unless the Court, upon oral or written request, grants an extension."
 {¶ 28} Neither party in Shields requested an evidentiary hearing within the court's time frame on the issue of frivolity. The court granted the Defendant's motion for sanctions, and after holding a subsequent hearing to determine the sanction amount, awarded the Defendant $4,392.50. Id. at ¶ 9.
 {¶ 29} The Second District Court of Appeals of Ohio found that under the limited circumstances of the facts in the Shields case, the court conducted a non-oral hearing on the matters submitted regarding "the issue of whether there was a prima facie showing of frivolous conduct warranting a subsequent hearing on the sanction to be imposed," thus satisfying R.C. 2323.51(B)(2)(a), (b) and (c). Shields at ¶ 631. See, also, Dreger v. Bundas (Nov. 15, 1990), Cuyahoga App. No. 57389 (holding that "the trial court may award [sanctions] only after conducting a hearing that allows the parties to present evidence in support or opposition to such award. It is essential that the trial court conduct a hearing in order to make a factual determination of whether there existed frivolous conduct and whether the party bringing the motion was adversely affected by such conduct"); Rogers v. Goodyear Tire RubberCo., Union App. No. 14-05-34, 2006-Ohio-6854 (holding that the court erred when it sua sponte imposed sanctions during a hearing on a motion to enforce a settlement agreement because no "separate *Page 11 
hearing date or advance notice of the hearing as required under R.C. 2323.51(B)(2) was provided").
 {¶ 30} In the instant case, however, the court did not issue an order before ruling on Madison's motion for sanctions. Thus, no hearing date was set, and the parties had no notice of when the court would rule on the motion or the deadlines for submitting evidence in support of or opposition to the motion. Furthermore, the court did not "remind" the parties that they could request an oral hearing nor did the court hold a subsequent hearing to determine the amount of the sanction award. Therefore, the court did not "conduct" a hearing as contemplated by the statute. Rather, the court issued a conclusory order granting Madison's motion for sanctions 20 days after the motion was filed and awarding $1,708.16 "as reimbursement awarded to deft. necessitated by pltfs. frivolous conduct." Accordingly, the court erred by not complying with R.C. 2323.51(B)(2).
 {¶ 31} Plaintiff's second assignment of error is sustained.
 {¶ 32} In Plaintiff's first assignment of error, he argues:
 {¶ 33} "I. The trial court erred by granting Appellee's motion for travel costs as a sanction against Appellant for voluntarily dismissing his claims without prejudice pursuant to Ohio Civ. R. 41(A)(1)(a) where such conduct is not properly considered `frivolous' under Ohio Rev. Code Section 2323.51." *Page 12 
 {¶ 34} In the instant case, a review of Madison's motion for sanctions shows that it was based on R.C. 2323.51(A)(2)(a)(i), which states that "frivolous conduct" is "[c]onduct of [a] * * * party to a civil action * * * that * * * obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation." Specifically, Madison stated that "Plaintiff's actions during the two days the parties were in Court for trial were nothing short of frivolous and served to harass both the credit union and Madison."
 {¶ 35} Madison's motion for sanctions identifies three instances of conduct on Plaintiff's part alleged to be frivolous: 1) Plaintiff threatened to bring in new counsel at the last minute; 2) Plaintiff increased his settlement demands as the case progressed; and 3) Plaintiff voluntarily dismissed his case under Civ. R. 41(A). Madison alleges that it was adversely affected by Plaintiff's conduct because its witness traveled from Madison, Wisconsin to Cleveland, Ohio, incurring expenses in anticipation of testifying at trial, which was cancelled because Plaintiff dismissed his case.
 {¶ 36} Madison also argues that it was "invited" by the trial court to file the motion for sanctions, stating that the "Court even admonished Mr. Wheeler concerning his conduct and stated that the Court would order him to pay Madison's travel expenses associated with the trial." *Page 13 
 {¶ 37} A careful review of the transcript shows that Madison's assertion takes the court's statements out of context. The instant case was called for trial on August 4, 2008. The court began by hearing arguments regarding various motions in limine. The court ruled against Plaintiff, excluding his claim for emotional and psychological damages and excluding his documentary evidence concerning economic damages. The court also prohibited Plaintiff from discussing punitive damages during trial. Then, at 3:25 p.m., Plaintiff advised his counsel, who in turn informed the court, that he wished to retain an additional lawyer to serve as co-counsel for trial the next day. The court questioned Plaintiff, who ultimately stated that he would discuss the matter with his current counsel. The conversation between the court and Plaintiff digressed to the merits of Plaintiff's case, with the court concluding that Plaintiff may be "misguiding" himself, and that "the trial is going to reveal the true outcome of all of this." The court then adjourned for the day.
 {¶ 38} The next day, August 5, 2008, Plaintiff filed a notice of voluntary dismissal pursuant to Civ. R. 41(A), in light of the court's adverse rulings on the first day of trial and Plaintiff's concern over potentially retaining additional counsel. At this point, a jury had been brought to the courtroom, but had not been impaneled, and the court made the following comments on the record:
 {¶ 39} "[Plaintiff] has his own opinion of what he is entitled to and has been something of an obstruction to our proceeding here. The most recent thing is *Page 14 
that he has filed a voluntary dismissal. So the case is dismissed now. The dismissal under the rules gives him an opportunity to refile, I suppose, once again, but we don't know exactly what he is going to do, but suffice it to say at this time the case is over — this case is over and your services here won't be needed. We were prepared, I was prepared to bring this case to trial, select the jury and proceed to a verdict, but there have been so many road blocks thrown before us by the plaintiff himself who for some reason is unable to accept the rules and the procedure, and the facts as they occur that govern trials of this sort, so that's where we stand at this point. And I can say to you that I have been a judge, a lawyer and then a judge for many, many, many years here. This is the first and only time this has ever happened, so it's a unique situation. I would be glad to see if we can answer any questions you may have. Other than that, you're excused and free to leave.
 {¶ 40} "The plaintiff will be responsible for all the costs that have been assessed so far, the costs to the county of our presence here for two days in this case. For example, the costs — we have a man here that had to come down — who was an employee and who is actually an executive with the Madison National Life Insurance, one of the Defendants which is up in Madison, Wisconsin. He came all the way down here for this trial, and yet the plaintiff has elected to dismiss the case and refile it a little later in accordance with the rules. I have attempted in part of the time that we have been asking for you to wait for us, I *Page 15 
have attempted to explain the financial significance and consequence of his actions here, but he seems to want to ignore that as well, so there are some other matters or aspects of this case that ought to be heard."
 {¶ 41} Nine days after Plaintiff dismissed his case, Madison filed its motion for sanctions, requesting Plaintiff "to pay the travel expenses of Madison's trial witness, totaling $1,708.16, as a sanction." InOrbit Electronics, Inc. v. Helm Instrument Co., 167 Ohio App.3d 301,316, 2006-Ohio-2317, this Court held that to "determine whether there was frivolous conduct, a trial court must initially determine whether an action taken by the party against whom sanctions are sought constituted frivolous conduct. If the conduct is found to be frivolous, the trial court must determine the amount of [sanctions] to be awarded to the aggrieved party." We add that pursuant to R.C. 2323.51 (B) (2), if the court found the conduct frivolous, it must also determine that it adversely affected another party.
 {¶ 42} While the "ultimate decision whether to impose sanctions for frivolous conduct * * * remains wholly within the trial court's discretion," the question of whether the conduct was frivolous may be subjected to an abuse of discretion or a de novo standard of review. If the conduct allegedly "serves merely to harass or maliciously injure another party," pursuant to R.C. 2323.51(A)(2)(a)(i), as is the case here, the trial court's factual determinations are given substantial deference and are reviewed for an abuse of discretion. *Page 16 Cleveland Indus. Square, Inc. v. Dzina, Cuyahoga App. Nos. 85336, 85337, 85422, 85423, 85441, 2006-Ohio-1095.
 {¶ 43} We first analyze whether Plaintiff's voluntary dismissal constituted frivolous conduct. It is well established law that "the right to one dismissal without prejudice is absolute under Civ. R. 41(A)(1)(a)," and exercising this right cannot be properly considered "frivolous conduct" pursuant to R.C. 2323.51. See Sturm v. Sturm (1992),63 Ohio St.3d 671; Gammons v. O'Neill (Aug. 18, 1994), Cuyahoga App. No. 66232; Indus. Risk Insurers v. Lorenz Equip. Co. (1994),69 Ohio St.3d 576, 579 (holding that "a trial court may not take any action that allows prejudice to flow from the plaintiff's first voluntary dismissal");[3] Frazee v. Ellis Bros., Inc. (1996),113 Ohio App.3d 828, 831 (holding that the court erred when it determined a party was not entitled to voluntarily dismiss the action pursuant to Civ. R. 41(A) after the court called the case for trial, because "a civil *Page 17 
trial commences when the jury is empaneled and sworn, or, in a bench trial, at opening statements").
 {¶ 44} We next turn to Madison's allegations that Plaintiff threatened to bring in new counsel at the last minute and increased his settlement demands, rather than engaging in good faith settlement negotiations, amounted to frivolous conduct. Madison cites no law to support these propositions. A thorough search of Ohio law reveals no cases directly on point with the issue before us. However, Ohio courts have recognized, albeit in a different context, "an individual's freedom to retain counsel of his choice." See Bigham v. Bigham (Sep. 24, 1992), Cuyahoga App. No. 61086, citing City of Cleveland v. Cleveland Elec. Illum.Co. (N.D. Ohio 1977), 440 F.Supp. 193; Kala v. Aluminum Smelting Refining Co., Inc. (1997), 81 Ohio St.3d 1 (opining that there is a public policy interest in permitting a party to be represented by counsel of his or her choice). See, also, Ohio Code of Professional Responsibility Canons 4 and 5 (specifically EC 5-7, recognizing that "a reasonable contingent fee is permissible in civil cases because it may be the only means by which a layman can obtain the services of a lawyer of his choice").
 {¶ 45} Additionally, there is no Ohio case law directly on point with the issue of whether a Plaintiff's increased settlement demands and alleged refusal to engage in good faith settlement negotiations amount to frivolous conduct. In fact, while settlements are generally encouraged in the litigation arena, we can *Page 18 
find no case law requiring a Plaintiff to engage in settlement discussions at all. In Wolfe v. Cooper (May 27, 1993), Cuyahoga App. No. 62372, we held that the trial court erred when it took into consideration the Plaintiff's refusal to accept a settlement offer, in the context of awarding attorney fees under the Consumer Sales Practices Act. "Such a course of action would, in our judgment, lead to incalculable mischief." Id. This Court explained its ruling as follows:
 {¶ 46} "Trial judges are obliged by the rules to take an active role as a catalyst for settlement. Civ. R. 16; Local Rule 21. Most practicing attorneys believe that settlement discussions, negotiations and attempts at pre-trial compromise between and among the court and counsel, will not be held against their clients if all efforts fail and trial ensues. Indeed, some trial judges consistently encourage that belief by words and actions. Ohio Rule of Evid. 408 provides that `evidence of conduct or statements made in compromise negotiations is likewise not admissible.' This is elementary. Whether or not parties accepted the final offer of compromise, however reasonable the court may in hindsight view the offer, cannot be a factor in the determination of attorney fees. See, e.g., cases enumerating the factors to be considered by the court in fixing reasonable attorney fees. Bittner v. Tri-CountyToyota [(1991), 58 Ohio St.3d 143], 145-146; James v. Thermal Master,Inc. (1988), 55 Ohio App.3d 51, 53-54, 562 N.E.2d 917. The factors enumerated do not include settlement or compromise considerations. *Page 19 
 {¶ 47} "If positions taken by the parties in pre-trial compromise discussions with the court are going to be used later on as grounds for awarding or not awarding attorney's fees when the case is litigated, counsel are going to be extremely reluctant to participate candidly in such `off the record' discussions. The good offices of the trial court in such activities will be severely compromised or diminished."
 {¶ 48} See, also, Shular v. Daimler Chrysler Corp. (Apr. 12, 2001), Cuyahoga App. No. 78856 (holding that an "offer of settlement should not be considered in determining whether or not a party is the prevailing party" for the purpose of awarding costs).
 {¶ 49} Accordingly, Madison's allegations, and thus the basis for the trial court's awarding sanctions under R.C. 2323.51, are not supported by Ohio law. Clearly, Plaintiff's Civ. R. 41(A) dismissal cannot be considered frivolous conduct and, by implication and analogy, we conclude that neither choice of counsel nor failure to reach a settlement are exercises in frivolity. The trial court abused its discretion by granting Madison's motion for sanctions based on frivolous conduct.
 {¶ 50} Plaintiff's first assignment of error is sustained.
Judgment reversed.
It is ordered that appellant recover of said appellee his costs herein taxed.
The Court finds there were reasonable grounds for this appeal. *Page 20 
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, P.J., and MARY J. BOYLE, J., CONCUR
[1] These allegations are taken from Plaintiff's original complaint filed August 22, 2002 and his amended complaint filed September 9, 2002.
[2] As Madison was the only Defendant to be awarded sanctions, Best is not a party to this appeal.
[3] We note that the sole exception to this rule is found in Civ. R. 41(D), which provides that if a Plaintiff refiles claims that were previously dismissed under Civ. R. 41(A)(1), "the court may make such order for the payment of costs of the claim previously dismissed as it may deem proper * * *." (Emphasis added.) "Costs" is defined as "the statutory fees to which officers, witnesses, jurors and others are entitled for their services on an action or prosecution and which the statutes authorize to be taxed and included in the judgment or sentence." State ex rel. Franklin Cty. v. Guilbert (1907),77 Ohio St. 333, 338. Litigation expenses, such as travel expenses for a witness, are not included within the ambit of "costs." See Krivacic v.Trautman (July 15, 1993), Cuyahoga App. No. 63127 (holding that "[c]ompensating the [Defendants] for litigation expenses [such as court reporter and deposition expenses] which will be useful in the subsequent action is not provided for under the award of costs * * *"); Renner v.Groscost (Jan. 10, 2000), Richland App. No. 99CA25, (holding that "[n]o statutory authority exists for the reimbursement of travel expenses"). *Page 1