[Cite as *A.H. v. T.H.*, 2023-Ohio-1969.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| A.H., | : | |
| Plaintiff-Appellant, | : | No. 111784 |
| v. | : | |
| T.H., | : | |
| Defendant-Appellee. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 15, 2023

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DV-21-385076

### *Appearances:*

A.H., *pro se.*

T.H., *pro se.*

MARY EILEEN KILBANE, P.J.:

{¶ 1} Plaintiff-appellant A.H. appeals from the trial court's judgment entry assessing attorney fees against her and finding that she engaged in frivolous conduct in her divorce proceedings against defendant-appellee T.H. For the reasons that follow, we affirm.

**Factual and Procedural History**

{¶ 2} The following background comes from the lower court's July 1, 2022 judgment entry. On January 14, 2021, in Cuyahoga D.R. No. DR-21-383815, T.H. filed a complaint for divorce against A.H. In his complaint, T.H. requested a temporary protection order ("TPO") enjoining A.H. from removing the parties' minor child, W.H., born April 10, 2019, from the state of Ohio without written consent or order from the court; enjoining A.H. from communicating with T.H.'s business associates and/or clients; and restraining A.H. from abusing, harassing, molesting, threatening, or physically injuring T.H. and the minor child. On March 1, 2021, the court held a hearing on the request for a TPO and other motions filed by the parties. On March 2, 2021, the Court filed a judgment entry issuing T.H. a TPO for the pendency of the divorce case.

{¶ 3} On April 22, 2021, A.H. filed a motion to reconsider the court's March 2, 2021 judgment entry, requesting changes to the language of the judgment entry and that the restraining order be made reciprocal, alleging that the entry could reasonably lead to harm to her reputation.

{¶ 4} Shortly thereafter, on April 27, 2021, A.H. filed a petition for an ex parte domestic violence civil protection order ("DVCPO") pursuant to R.C. 3113.31, seeking protection for herself and for W.H., initiating the proceedings in the underlying case. The magistrate conducted an ex parte hearing and issued an ex parte civil protection order for W.H. but declined to issue an ex parte DVCPO for A.H.

{¶ 5} On May 19, 2021, three weeks after A.H. represented to the magistrate that the parties' minor child needed protection from T.H., the parties reached a settlement in their divorce case, including a shared parenting plan that provided for parenting time to be shared approximately equally between A.H. and T.H. The parties, in court with their respective counsel, affirmed under oath that they entered into the agreement knowingly and voluntarily and that the shared parenting plan was in the best interests of W.H.

{¶ 6} On June 3, 2021, the court was set to hold a hearing on A.H.'s petition for a DVCPO in relation to W.H. T.H. was present with his counsel, but A.H. failed to appear. Approximately 20 minutes before the scheduled hearing, A.H. called the domestic violence department and stated that she did not wish to go forward with her petition for DVCPO as it related to W.H. A.H. indicated that she was in her car taking W.H. to preschool but would be willing to sign an entry of dismissal via email.

{¶ 7} Subsequently, the domestic violence department staff emailed A.H. a judgment entry of dismissal requesting that the court dismiss the petition without prejudice, which A.H. signed and emailed back.

{¶ 8} At the June 3, 2021 hearing, the magistrate read the judgment entry of dismissal into the record. T.H. objected to the petition being dismissed without prejudice and requested the matter be dismissed with prejudice and requested an award of reasonable attorney fees. Specifically, in making his objection, T.H. stated the following: on May 19, 2021, the parties agreed to a shared parenting plan; they

agreed that both parties would be named residential and custodial parents of W.H.; A.H. stated under oath that shared parenting was in the best interest of W.H.; T.H.'s counsel spent significant time and resources preparing for the June 3, 2021 DVCPO hearing; the parties had engaged in open discovery for several weeks; A.H. failed to appear for the June 3, 2021 hearing and only contacted the court 20 minutes prior to the hearing to dismiss the petition; and A.H. used the domestic violence case to attempt to manipulate the parties' divorce case.

{¶ 9} On June 8, 2021, the court issued its judgment entry dismissing the petition with prejudice and took T.H.'s request for attorney fees under advisement.

{¶ 10} On July 7, 2021, T.H. filed a motion for award of court costs, reasonable attorney fees, and other reasonable expenses. The court scheduled a hearing on the motion for August 17, 2021.

{¶ 11} At the August 17, 2021 hearing, A.H. testified that because she believed that a separate criminal case initiated against T.H. would result in a protection order, she elected not to proceed with the DVCPO. A.H. also testified that in the divorce proceedings, she entered into a settlement with T.H. that included shared parenting. Specifically, A.H. testified:

> Yes, my understanding, well I was like, you know what? I'm just going to get this divorce done because with respect to there were two pieces in my mind, obviously financial, and then with [W.H.]

> With [W.H.] I thought there's no way that the system is going to allow this man to have parenting time. There's no way, so I could agree to this, but there's the Civil Protection Order, and then there will be the criminal protection order. This is like a loser like the gravy train, it's

not real, I thought I was agreeing to something not real that was not going to happen.

T.H.'s counsel also testified at the hearing as to the attorney fees billed to T.H. in preparation to defend against the DVCPO.

{¶ 12} Almost a year later, on July 1, 2022, the trial court granted T.H.'s motion for award of court costs, reasonable attorney fees, and other reasonable expenses. The court found A.H. engaged in frivolous conduct pursuant to R.C. 2323.51(A)(2)(a)(i) and that T.H. was adversely affected by A.H.'s frivolous conduct. The court further found that T.H. was entitled to an award of reasonable attorney fees; that T.H.'s counsel's billed hours of 166.75 were reasonable; and that a reasonable attorney fee in the matter was $66,700. Thus, the court ordered A.H. to pay T.H. $66,700.

{¶ 13} Specifically, the court made the following findings of fact and conclusions of law, in relevant part:

> On July 7, 2021, [T.H.] filed his motion for award of court costs, reasonable attorney fees and other reasonable expenses following [A.H.'s] dismissal of her petition for DVCPO. In his brief, [T.H.] alleges the following: [A.H.] only filed the DVCPO after failing to extort a temporary support agreement; [A.H.] never feared for the safety of the minor child, W.H.; and [A.H.] never intended to go forward with the DVCPO full hearing. [T.H.] further states that he incurred significant legal expenses preparing for the full hearing on the DVCPO. [T.H.] requested an oral hearing on his motion which was subsequently set for August 17, 2021 before [the] magistrate.

> Present at the August 17, 2021 hearing on [T.H.'s] motion for attorney fees were A.H., pro se, and T.H., with counsel. [T.H.] called [A.H.] as a witness and his attorney to testify on attorney fees. [A.H.] also testified on her own behalf. The court admitted into evidence [T.H.'s] exhibits A pages 20, 21, 45, 46, and 51; X; AA; FF page 114; and YY. [A.H.] did not enter any exhibits into evidence.

At the August 17, 2021 hearing [A.H.] was questioned as to why she filed the petition for ex parte DVCPO on April 26, 2021. [A.H.] testified that she filed the DVCPO because she believed that on four separate occasions [T.H.] injured their minor son and she feared for his safety. [A.H.] testified that on four separate occasions she observed marks on the minor child after picking him up from daycare. [A.H.] concluded that the marks must have been caused by [T.H.] despite W.H. having not been in his care the prior twelve hours. [A.H.] also testified that she never asked the daycare whether they had seen the marks or if the injuries had occurred at the daycare when she initially observed them. [A.H.'s] reasoning was that it was a good school and they would have let her know if W.H. was injured in their care. In support of her allegations, [A.H.] testified that a neutral third party reported W.H.'s injuries to Children's Services. Upon further examination, [A.H.] admitted that she knew the neutral third party was W.H.'s daycare because [A.H.] told W.H.'s daycare that [T.H.] had caused injuries to W.H. [A.H.] also testified that she was aware that the school was a mandated reporter.

[T.H.] questioned [A.H.'s] motive for filing the DVCPO and about several text messages she sent to [T.H.] In messages sent February 2021 [A.H.] asks [T.H.] to "pay for everything up to $9,000.00 per month" and requested a settlement that was the same as his prior marriage, despite his prior marriage being significantly longer than his marriage to [A.H.] Another message allegedly sent by A.H. questioned why [T.H.] was obligated to pay his not yet ex-wife support of upwards of $9,000.00 a month during the pendency of that divorce, even though [T.H.] was living with and engaged to [A.H.] [A.H.'s] message stated her low opinion of [T.H.] and alleged that [A.H.] and their minor son are not important to [T.H.] [A.H.] also sent a text message to [T.H.] in February 2021 again requesting [T.H.] pay her expenses because he was able to pay support in his previous marriage. The following week [A.H.] sent [T.H.] text messages that included disparaging language in reference to [T.H.] In that same message [A.H.] sent a draft brief she planned to file in relation to her request for temporary spousal support. She testified that the brief contained several allegations of domestic violence and that she planned to file it the following Monday. When questioned at the August 17, 2021 hearing as to whether the text message was an attempt to coerce [T.H.] to agree to her support demands, [A.H.] replied, "I'm trying to think. I mean, I wasn't going to protect him from the truth anymore. Like the truth needs to be told. And I, you know what? I'm glad he didn't pay me because now he's going to jail."

At the August 17, 2021 hearing, [A.H.] testified that on May 19, 2021, less than four weeks after she had filed for the DVCPO, she entered into a shared parenting agreement, in-court and on the record, with [T.H.] that named each party residential parent and shared parenting time [divided] almost equally between the parties. [A.H.] also testified under oath at the May 19, 2021 hearing in the divorce case that she believed the shared parenting agreement was fair, just, and equitable and that it was in the best interests of their minor son. In addition, [A.H.] admitted that in her testimony on May 19, 2021 she was not coerced or forced to sign the shared parenting agreement. When questioned by counsel for [T.H.] as to why she would agree to shared parenting when she also claimed that she feared for W.H.'s safety, she stated that she did not ever believe the shared parenting agreement would "come into fruition" because [T.H.] had been indicted criminally and it was just "common frickin sense" that the Court wouldn't allow [T.H.] to have parenting time. [A.H.] admitted that although she agreed to the parenting plan on the record, she did not inform the court that she would not abide by the parenting plan.

[A.H.] also testified to why she dismissed the DVCPO just minutes prior to the start of the full hearing on June 3, 2021. She stated that she believed she would be issued a restraining order in the criminal case, so she did not need a second one. She claimed to have been informed that the court was working on a protection order that she would receive by June 1, 2021. When she did not receive anything on June 1, 2021 she believed she would receive it before [T.H.'s] next parenting time scheduled for June 8, 2021. However, [A.H.] did not have any witnesses or exhibits to back up her assertions. [A.H.] admitted that pursuant to the trial order for the June 3, 2021 hearing, she was to have her witness list filed at least two weeks prior, on or before May 20, 2021. She also admitted that she was aware that [T.H.] was preparing for trial. She received exhibits and a witness list and all kinds of "intimidating stuff." She stated that she could not proceed with the hearing because she did not have a lawyer and [T.H.] had sent her "all that stuff."

The other witness to testify at the August 17, 2021 hearing was [T.H.'s] counsel. His testimony was limited only to attorney fees. Counsel testified that he and his partner were retained to defend against criminal charges and the DVCPO. The total hours billed in preparation for the full hearing on the DVCPO equaled 160.45 billable hours. The total amount billed in preparation for the DVCPO hearing is $78,104.50. Counsel also testified that his firm spent 6.3 hours

preparing for the hearing on attorney fees for a billable amount of $3,748.50. The total amount of [T.H.'s] attorney fees is $81,853.00.

The court must look to [A.H.'s] own behaviors in determining whether the filing of the DVCPO was frivolous. The parties were married only six months when [T.H.] filed for divorce. [A.H.] wrongly believed she was entitled to support equal to that of [T.H.'s] former wife, despite that marriage having lasted approximately two decades. [A.H.] was incredulous that [T.H.] was required to pay support even during the pendency of [T.H.] and his ex-wife's divorce. When faced with the reality that she would not be compensated to her satisfaction she threatened to use the court's divorce process as leverage by filing an affidavit detailing alleged incidents of domestic violence. In a text she informed [T.H.] that she drafted the brief herself and intended to file it herself so that her counsel could not modify the brief. She subsequently, by and through counsel, filed the affidavit in support of her motion for temporary support, though it should be noted that her counsel did not sign the document, only executed the service. The affidavit did not contain any financial information or legal basis for an award of temporary support despite [A.H.] being a licensed attorney in good standing.

On March 2, 2021, [T.H.] was granted a temporary restraining order enjoining [A.H.] from abusing, harassing, threatening or physically injuring [T.H.] On April 22, 2021, [A.H.] filed a motion to reconsider requesting the judgment entry granting [T.H.'s] temporary restraining order be modified and made reciprocal because the implication that [A.H.] harmed [T.H.] or their minor child was harmful to her personal and professional standing in the community. [A.H.] does not allege that she is fearful of [T.H.], or that she fears for her child, which is curious because she testified at the August 17, 2021 hearing for attorney fees that she was certain on April 9, 2021 that [T.H.] had caused the injuries to their minor child W.H. It was only after the court issued the temporary restraining order, after [A.H.] filed her motion to reconsider, and after the court denied her request for support, that [A.H.] used her only remaining leverage, an ex parte DVCPO.

In addition, on May 19, 2021, [A.H.] knowingly and voluntarily entered into a shared parenting plan with [T.H.] in which she agreed to share custody of W.H. [A.H.], under oath and represented by counsel, agreed that the shared parenting plan was in W.H.'s best interests, despite the fact that only three weeks prior she obtained an ex parte DVCPO alleging that W.H. needed protection from [T.H.]

The full hearing on the DVCPO was scheduled for June 3, 2021. [T.H.] and his counsel spent significant time preparing for the hearing. [T.H.] issued numerous subpoenas, filed deposition transcripts, exhibit lists, witness lists, motions, and a trial brief in preparation for the full hearing. [T.H.] was in strict compliance with the magistrate's trial orders filed May 14, 2021. [A.H.] failed to file a trial brief or any exhibit or witness lists as required by the trial order.

On June 3, 2021, [T.H.] appeared for trial with counsel and several witnesses prepared to testify. [A.H.] failed to appear, but rather called the Court approximately 20 minutes prior to the start of the hearing requesting a full dismissal. When questioned at the August 17, 2021 hearing as to why she waited until just before the hearing to call and dismiss her petition she testified that she believed she would be given a restraining order in the pending criminal case and was waiting for confirmation before dismissing the DVCPO. [A.H.] dismissed the DVCPO despite never receiving any confirmation and knowing that there would be no active restraining order at that time.

This court goes to great lengths to lay out the precise sequence of events in this matter because it is evidence of [A.H.'s] state of mind when filing for the DVCPO. [A.H.] is a licensed attorney in the state of Ohio. She claims numerous times in her testimony to not understand how the law works. However, even if that is the case, [A.H.] certainly has the ability and knowledge to familiarize herself with the laws relevant to her situation. Instead, she feigned willful ignorance in an attempt to insulate herself from the consequences of her actions. [A.H.] incorrectly assumed she would receive a large financial settlement in the divorce case despite only being married to [T.H.] for six months. [A.H.] wanted the same amount of support as [T.H.'s] former spouse despite no legal basis existing for such an award. When it became clear that [T.H.] was not going to agree to such a settlement, [A.H.] threatened [T.H.] with domestic violence allegations. [A.H.] then followed through on that threat by filing a petition for an ex parte DVCPO for herself and W.H. The court could not grant the ex parte DVCPO for [A.H.] but did for the minor child based on [A.H.'s] allegations that [T.H.] harmed W.H. on and before April 9, 2021. However, [A.H.] never mentioned the alleged harm when asking the court to reconsider the temporary restraining order on April 22, 2021. The alleged harm was not mentioned when [A.H.] agreed to the shared parenting plan. [A.H.], represented by counsel, and herself a licensed attorney, testified under oath at the May 19, 2021 final divorce hearing that shared parenting was in W.H.'s best interests.

The court must also conclude that [A.H.] never intended to go forward with the DVCPO full hearing, despite being aware that [T.H.] spent significant time, money, and resources to prepare for this hearing. [A.H.] claims she was waiting on a protection order in the criminal case, but again, [A.H.] is a licensed attorney. She is fully capable of familiarizing herself with the procedure for securing a protection order in the criminal matter. Her willful ignorance in the criminal matter cannot and should not be used as a shield from the consequences of her actions in the civil domestic violence action.

The most significant evidence of [A.H.'s] intent are her own words. At the August 17, 2021 hearing [A.H.] stated that she was glad that [T.H.] did not "pay" her because… "he is going to jail." In other words, had [T.H.] agreed to her demands, she would not have filed the criminal charges against him. It can be inferred that the DVCPO was filed for this same reason. [A.H.] sought to harass and maliciously injure [T.H.] with the DVCPO, despite the fact that there was no evidence that [A.H.] actually feared for W.H.'s safety. She also sought to destroy [T.H.'s] reputation and professional standing within the legal community. [A.H.] failed to dismiss the action prior to the hearing date, to delay the proceedings, aware that [T.H.] would spend significant time, money, and resources preparing for the hearing. After reviewing the entirety of the record it is clear that [A.H.'s] petition for a DVCPO was frivolous as defined in R.C. 2323.51. Not only was [A.H.'s] conduct frivolous, but it also appears from the record that [A.H.'s] conduct was vindictive. [T.H.] was adversely affected by [A.H.'s] frivolous conduct and is entitled to an award of reasonable attorney fees.

At the August 17, 2021 hearing on attorney fees [T.H.'s] counsel testified that the attorney fees billed in preparation to defend against the DVCPO and the resulting attorney fee hearing are $81,853.00 for 166.75 billable hours. [A.H.] did not question [T.H.'s] counsel regarding the reasonableness of the total hours or amount billed. However, the court is required to do its own analysis to determine reasonableness. Here, [T.H.'s] counsel had a limited amount of time to do their own investigation and prepare for the June 3, 2021 hearing. It is not unreasonable that [T.H.'s] counsel felt it prudent to have two attorneys working simultaneously on the matter.

Further, the amount of discovery and preparation [T.H.'s] counsel required to defend against [A.H.'s] frivolous claim is reasonable. [T.H.] needed a comprehensive and aggressive defense to prevail in the DVCPO full hearing on June 3, 2021. Therefore, the court finds, based

on the totality of the circumstances, the total number of hours billed to prepare for the civil hearing on June 3, 2021 to be reasonable.

[T.H.] has requested attorney fees in the amount of $81,853.00. [T.H.'s] counsel are both highly skilled and experienced attorneys and well-respected members of the legal community. The serious nature of [A.H.'s] accusations warranted the retention of counsel with the legal expertise necessary to mount a significant defense. Although the court recognizes the limited financial resources of [A.H.], this is not meant to minimize [her] egregious conduct. Therefore, the court finds that a reasonable attorney fee in this matter is $66,700.00.

{¶ 14} A.H. appeals, presenting five assignments of error for our review:

I. The trial court erred in assessing attorney fees against a petitioner in a domestic violence civil protection order proceeding.

II. The trial court erred in relying on evidence outside of the record to find that [A.H.] engaged in frivolous conduct within the purview of R.C. 2323.51.

III. The trial court erred in considering [A.H.'s] decision to voluntarily dismiss her petition for a domestic violence civil protection order without prejudice as well as her motives behind her decision frivolous conduct within the purview of R.C. 2323.51.

IV. The trial court erred in finding that [A.H.] engaged in frivolous conduct within the purview of R.C. 2323.51.

V. The trial court abused its discretion in finding that [T.H.'s] attorneys' fees were reasonable as such a finding is not supported by competent, credible evidence in the record.

## Legal Analysis

## Standard of Review

{¶ 15} No single standard of review applies in R.C. 2323.51 cases. *Lozada v. Lozada*, 11th Dist. Geauga No. 2012-G-3100, 2014-Ohio-5700, ¶ 13, citing *Wiltberger v. Davis*, 110 Ohio App.3d 46, 51, 673 N.E.2d 628 (10th Dist.1996). Rather, in a frivolous conduct appeal, we must consider mixed questions of law and

fact. *Id.*, citing *Judd v. Meszaros*, 10th Dist. Franklin No. 10AP-1189, 2011-Ohio-4983, ¶ 18. A trial court's factual findings must be given deference, and, as such, we will not disturb such determinations absent an abuse of discretion. *Id.*, citing *McPhillips v. United States Tennis Assn. Midwest*, 11th Dist. Lake No. 2006-L-235, 2007-Ohio-3595, ¶ 28. The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983); *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463. Legal questions are reviewed de novo. *Lozada* at ¶ 13.

## I. Attorney Fees in a DVCPO Proceeding

{¶ 16} In A.H.'s first assignment of error, she argues that the trial court erred in assessing attorney fees against her in a DVCPO proceeding. Specifically, A.H. argues that the assessment of attorney fees against a petitioner in a DVCPO proceeding violates both public policy and relevant statutes. A.H. argues that the filing of a DVCPO petition pursuant to R.C. 3113.31 constitutes a "special statutory proceeding" and therefore does not constitute an "action" under R.C. 2323.51. We disagree.

{¶ 17} The trial court awarded attorney fees to T.H. pursuant to R.C. 2323.51. R.C. 2323.51(B)(1) provides that "any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal." R.C. 2323.51(A)(1)(a) defines conduct as:

> The filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action, including, but not limited to, a motion or paper filed for discovery purposes, or the taking of any other action in connection with a civil action.

Finally, frivolous conduct is defined in R.C. 2323.51(A)(2)(a)(i) as conduct that "obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation."

{¶ 18} A.H. seeks to create a distinction between a "special statutory proceeding" and an "action." While A.H. is correct that a petition filed under R.C. 3113.31 is a special proceeding, it does not follow that such a special proceeding does not qualify as an "action" pursuant to R.C. 2323.51. The Ohio Supreme Court has found that "[a] 'civil action' has been defined as an '[a]ction brought to enforce, redress, or protect private rights. In general, all types of actions other than criminal proceedings." *Estate of Johnson v. Randall Smith, Inc.*, 135 Ohio St.3d 440, 2013-Ohio-1507, 989 N.E.2d 35, ¶ 15, quoting *Black's Law Dictionary* 222 (5th Ed. 1979). In deciding whether the trial court properly awarded husband attorney fees for defending his wife's frivolous petition for a DVCPO, the Eleventh District Court of Appeals found that the Ohio Supreme Court's definition of "civil action" "envelops the relief sought in a petition for a domestic violence civil protection order; namely, protection of the person, oneself, or one's child." *Lozada*, 11th Dist. Geauga No. 2012-G-3100, 2014-Ohio-5700, at ¶ 36. We agree.

{¶ 19} A.H. points to systemic barriers and inequitable access to justice for domestic violence petitioners as a rationale for precluding the assessment of attorney fees in this case. What this argument ignores is that this case involves frivolous conduct. Finding that attorney fees can be assessed for frivolous conduct would not, as A.H. asserts, defeat and deter domestic violence victims from coming forward and seeking legal protection. It will, however, as the court in *Lozada* stated, "merely [discourage] using the legal system as a forum for gamesmanship or harassment." *Lozada* at ¶ 40. We decline to adopt A.H.'s interpretation of the interaction between R.C. 3113.31 and 2323.51, which would "operate to remove all special proceedings from the operation of the frivolous conduct statute" and undermine the General Assembly's intention to protect litigants from abuses of the legal process. *Id.* For these reasons, A.H.'s first assignment of error is overruled.

## II. Frivolous Conduct

{¶ 20} In A.H.'s second assignment of error, she argues that the trial court erred in relying on evidence outside of the record to find that she engaged in frivolous conduct pursuant to R.C. 2323.51. In her third assignment of error, A.H. argues that the trial court erred in considering A.H.'s decision to voluntarily dismiss her DVCPO petition without prejudice, as well as the motives behind her decision, to be frivolous conduct pursuant to R.C. 2323.51. In her fourth assignment of error, A.H. argues that the trial court erred in finding that she engaged in frivolous conduct pursuant to R.C. 2323.51. Because A.H.'s second, third, and fourth

assignments of error each involve the trial court's determination that A.H. engaged in frivolous conduct, we will address them together.

{¶ 21} A.H. argues that the trial court improperly relied exclusively on information outside of the record in determining that she engaged in frivolous conduct pursuant to R.C. 2323.51. Specifically, A.H. asserts that the record contains no evidence of the duration of her marriage to T.H. and the only document from the parties' divorce proceedings that was made a part of the record in this case is a transcript from the May 19, 2021 settlement hearing. We are not persuaded by A.H.'s assertions.

{¶ 22} With respect to the duration of the parties' marriage, we note that the record contains testimony from A.H. herself as to the duration of the marriage. The record also includes the entire transcript of A.H.'s deposition; A.H. did not object to the introduction of the transcript as evidence. Further, the record contains numerous pleadings and judgment entries from the divorce proceedings. Therefore, the trial court did not err because it did not rely on evidence outside of the record. A.H.'s second assignment of error is overruled.

{¶ 23} A.H. argues in her third assignment of error that the trial court erred in considering her decision to voluntarily dismiss her DVCPO petition with prejudice, and her motives for doing so, in determining that she had engaged in frivolous conduct pursuant to R.C. 2323.51. In support of this argument, A.H. notes that the "exercise of a right of voluntary dismissal with prejudice cannot be

construed as frivolous or fraudulent conduct." *Wheeler v. Best Emp. Fed. Credit Union*, 8th Dist. Cuyahoga No. 92159, 2009-Ohio-2139, ¶ 43.

{¶ 24} As an initial matter, we note that while the trial court noted A.H.'s attempt to voluntarily dismiss her DVCPO petition in its judgment entry finding that she had engaged in frivolous conduct, nothing in the record suggests that the trial court determined that this attempt itself constituted frivolous conduct. Rather, the trial court reasonably considered all of A.H.'s conduct related to the filing of the DVCPO petition in determining that she ultimately engaged in frivolous conduct. Further, a Civ.R. 41(A)(1) voluntary dismissal does not divest a trial court of jurisdiction to consider a subsequently filed motion for sanctions pursuant to R.C. 2323.51; to hold otherwise would effectively leave an aggrieved party without a remedy to pursue a claim for frivolous conduct. *ABN AMRO Mtge. Group, Inc. v. Evans*, 8th Dist. Cuyahoga No. 96120, 2011-Ohio-5654, ¶ 7. Additionally, we reiterate that the trial court ultimately dismissed A.H.'s petition with prejudice pursuant to Civ.R. 41(A)(2).

{¶ 25} Moreover, a review of the record, and specifically the trial court's judgment entry, shows that the trial court was in no way penalizing A.H. for attempting to voluntarily dismiss her DVCPO petition. To the contrary, the trial court held that A.H. "failed to dismiss the action prior to the hearing date," opting instead to attempt to dismiss the action minutes before trial, "to delay the proceedings, aware that [T.H.] would spend significant time, money, and resources

preparing for the hearing." For these reasons, A.H.'s third assignment of error is overruled.

{¶ 26} In her fourth assignment of error, A.H. argues that the trial court erred in finding that she engaged in frivolous conduct pursuant to R.C. 2323.51. A.H. attempts to support this assignment of error with an extensive summary of the alleged conduct she cited in support of her petition for DVCPO. Specifically, she points to her testimony at the ex parte hearing on the DVCPO and at the hearing on T.H.'s motion for attorney fees as an "undisputed" account of T.H.'s abuse against her.

{¶ 27} Where a trial court determines that a party's conduct serves merely to harass or maliciously injure another party pursuant to R.C. 2323.51(A)(2)(a)(i), the trial court's factual determinations are given substantial deference and are reviewed for an abuse of discretion. *Wheeler*, 8th Dist. Cuyahoga No. 92159, 2009-Ohio-2139, at ¶ 42, citing *Cleveland Indus. Square, Inc. v. Dzina*, 8th Dist. Cuyahoga Nos. 85336, 85337, 85422, 85423, and 85441, 2006-Ohio-1095.

{¶ 28} The question of whether A.H.'s DVCPO petition had merit is not at issue in this appeal. Moreover, where A.H.'s petition was dismissed prior to a full hearing, we note that her account of T.H.'s alleged abuse was necessarily undisputed.[1] While A.H. obviously disagrees with the trial court's decision, she has

---

[1] Of course, to the extent that the record reflects extensive preparation for trial on the part of T.H., and to the extent that T.H. filed a motion for attorney fees arguing that A.H. engaged in frivolous conduct, it can reasonably concluded that A.H.'s version of events was, in fact, disputed.

failed to demonstrate how the trial court abused its discretion in finding that she engaged in frivolous conduct.

{¶ 29} Our review of the record reveals that the trial court did not abuse its discretion in determining that A.H. engaged in frivolous conduct. Our review of the record, including text messages from A.H., A.H.'s deposition, and A.H.'s testimony at the hearing on T.H.'s motion, support the trial court's findings. A.H. voluntarily agreed to shared parenting with T.H. in their divorce proceedings. Several weeks later, having failed to secure her desired financial support in the divorce case, A.H. filed a DVCPO petition based primarily on conduct she alleged occurred before the parties were married. Minutes before the full hearing on the DVCPO was set to take place — having failed to comply with the court's orders regarding this hearing — A.H. attempted to dismiss her petition based on a seemingly erroneous belief that another protection order would be issued. Our review of the record reveals nothing indicating that the trial court's findings were unreasonable, arbitrary, or unconscionable. For these reasons, A.H.'s fourth assignment of error is overruled.

## III. Attorney Fees

{¶ 30} In her fifth and final assignment of error, A.H. argues that the trial court abused its discretion in finding that T.H.'s attorneys fees were reasonable because such a finding is not supported by competent, credible evidence in the record.

{¶ 31} Pursuant to R.C. 2323.51(B)(1), "any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable

attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal." "If the representation is not on a contingent fee basis, the amount of reasonable attorney fees that may be awarded for frivolous conduct 'shall not exceed' * * * the attorney's fees that were reasonably incurred by a party.'" *Musial Offices, Ltd. v. Cuyahoga Cty.*, 8th Dist. Cuyahoga No. 108810, 2021-Ohio-2325, ¶ 35, quoting R.C. 2323.51(B)(3)(b). The decision whether to award attorney fees under R.C. 2323.51(B)(1) rests within the sound discretion of the trial court. *Id.*, citing *Internatl. Union of Operating Engineers v. Laborers' Internatl. Union of N. Am. Local 310*, 8th Dist. Cuyahoga No. 104774, 2017-Ohio-1055, ¶ 10.

{¶ 32} In *Bittner v. Tri-Cty. Toyota, Inc.*, the Ohio Supreme Court set forth a two-part test for determining what constitutes "reasonable" attorney fees. *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 569 N.E.2d 464 (1991). First, the trial court multiplies the number of hours reasonably expended by the attorney by a reasonable hourly rate. *Id.* at 145. Then, the trial court may adjust the fee upward or downward based on the factors listed in Prof.Cond.R. 1.5(a). *Harris v. Rubino*, 156 Ohio St.3d 296, 2018-Ohio-5109, 126 N.E.3d 106, ¶ 3, citing *Bittner* at syllabus. These factors include the time and labor required, the novelty and difficulty of the questions involved, the amount involved and the results obtained, the time limitations imposed by the client or the circumstances, and the fees customarily charged in the locality for similar legal services. Prof.Cond.R. 1.5(a). "The trial court has the discretion to determine which factors to apply, and in what manner that application will affect the initial calculation." *Bittner* at 146.

{¶ 33} The party seeking an award of attorney fees bears the burden of demonstrating the reasonableness of the requested fees. *Alcorso v. Correll*, 8th Dist. Cuyahoga No. 110218, 2021-Ohio-3351, ¶ 40. Further, it is well-settled that where a court is empowered to award attorney fees, the amount of such fees is within the sound discretion of the trial court. *Bittner* at 146. "Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere." *Id.*

{¶ 34} While we generally review a trial court's decision regarding the reasonableness and amount of attorney fees for abuse of discretion, our review of the record in this case reveals that A.H. raised no objection to the amount or reasonableness of T.H.'s requested attorney fees below. "Absent plain error, a party who failed to object below cannot now raise an objection for the first time on appeal." *Alcorso* at ¶ 44. A.H. also declined the opportunity to cross-examine counsel with respect to attorney fees. Following counsel's testimony about the fees incurred, the following exchange took place:

> MAGISTRATE: Ma'am, do you have any — as I said, it's more of an accounting. Do you have any questions about the legitimacy of those charges and hours?
>
> A.H.: No, Your Honor.

{¶ 35} "Plain errors are errors in the judicial process that are clearly apparent on the face of the record and are prejudicial to the appellant." *Wells Fargo Bank, N.A. v. Lundeen*, 8th Dist. Cuyahoga No. 107184, 2020-Ohio-28, ¶ 12, quoting *Macintosh Farms Community Assn., Inc. v. Baker*, 8th Dist. Cuyahoga No.

102820, 2015-Ohio-5263, ¶ 8.  In civil cases, review for plain error is to be conducted "with the utmost caution." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997).  Plain error is limited to those "extremely rare cases" in which "exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a materially adverse effect on the character of, and public confidence in, judicial proceedings." *Id.*  Plain error exists only where the error "seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Id.* at 122-123.  "The plain error doctrine should never be applied to reverse a civil judgment simply because a reviewing court disagrees with the result obtained in the trial court, or to allow litigation of issues which could easily have been raised and determined in the initial trial." *Id.* at 122.

{¶ 36} A.H. has not argued in this appeal that the trial court's award of attorney fees constituted plain error.  Our review of the record shows that the evidence presented in support of T.H.'s requested amount of attorney fees was somewhat limited; one of T.H.'s two attorneys testified as to the number of hours spent on his defense of the DVCPO petition, as well as both attorney's respective hourly rates.  The record does not contain any invoices or other documentation of the fees T.H. incurred, nor does it contain any additional testimony as to the reasonableness of T.H.'s requested attorney fees.  Despite this, we cannot conclude that the trial court's award of attorney fees in the amount of $66,700 — a downward

deviation of over $15,000 from the amount T.H. requested — constitutes plain error.

{¶ 37} In light of the foregoing, we find no plain error in the trial court's award of attorney fees to T.H. Therefore, A.H.'s fifth assignment of error is overruled.

{¶ 38} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, domestic relations division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

LISA B. FORBES, J., and
EMANUELLA D. GROVES, J., CONCUR